UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| ALVIN LAVON HENSLEY, JR., | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 2:04CV00061 ERW |
| MONTGOMERY COUNTY, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court upon Defendants' Motion for Summary Judgment [doc. #64]. Plaintiff filed a Motion to Strike Defendants' Motion for Summary Judgment [doc. # 68], alleging Defendants' Motion was filed out of time.[1]

Plaintiff was a prisoner in Montgomery County Jail from July 1, 2004 through April 3, 2005. He has filed this suit against jail officials seeking damages pursuant to 42 U.S.C. § 1983 for violations of his right to medical care guaranteed under the Eighth Amendment of the United States Constitution. Plaintiff alleges that Defendants were deliberately indifferent to the pain caused by his partially torn Achilles tendon. Specifically, Plaintiff avers that Defendants inappropriately: (1) delayed treatment of Plaintiff by two weeks due to a failure to properly screen incoming inmates, (2) refused to refer Plaintiff to a specialist, (3) used leg restraints when transporting him to and from the jail, (4) forced Plaintiff to sleep on the top bunk and climb stairs to shower, (5) failed to give him crutches, and (6) initially refused to provide Plaintiff pain

---

[1]The Court notes that the Court's May 18, 2005 Order extended the deadline for filing motions for summary judgment to August 12, 2005. Defendants timely filed their Motion on August 12, 2005.

1

medication other than Ibuprofen.  Defendants seek summary judgment in their favor on all claims against them.  For the reasons below, the motion is granted.

I.  **BACKGROUND**

Plaintiff injured his Achilles tendon on August 3, 2003 while playing handball at the Jackson County Jail.  He was taken to the Jackson County Infirmary, and the Infirmary staff arranged to have Plaintiff taken to the Truman Medical Center emergency room.  On August 6, 2003, a staff member from an orthopedic clinic scheduled Plaintiff for surgery on August 14, 2003, and put Plaintiff's leg in a non-weight bearing cast.  Plaintiff was discharged from Jackson County Jail on August 6, 2004.  He stayed in a mission in Kansas City for six days until his sister picked him up and drove him to her home in Howell County, Missouri.  Plaintiff lived with his sister from August 10, 2003 until June 30, 2004.  Plaintiff did not return to Kansas City for the foot surgery that was scheduled for August 14, 2003.  On December 23, 2004, Plaintiff went to the emergency room at Cox Health in Springfield, Missouri.  The hospital put a new cast on Plaintiff's foot and recommended he speak with someone in their orthopedic clinic to set up an appointment.  Plaintiff did not make an appointment with the orthopedic clinic following his visit to the emergency room.

On June 30, 2004, Plaintiff was arrested in Howell County on an outstanding warrant in Montgomery County.  Plaintiff alleges that during his arrest, two officers grabbed him and "something popped" in his leg again.  Plaintiff arrived at Montgomery County Jail early in the morning of July 1, 2004.  He was detained at the Montgomery County Jail on the outstanding warrant until his conviction on November 22, 2004.  On that day, he was sentenced to serve time in the Montgomery County Jail, until his release on April 3, 2005.

Plaintiff filed a medical grievance on July 12, 2004, claiming that he was experiencing pain from his torn Achilles tendon. Prior to Plaintiff's appointment, Lisa Stevenson, a nurse at the Montgomery County Jail, asked Plaintiff whether he had health insurance. Pursuant to jail policy, if an inmate has health insurance, the insurance company will be billed for covered medical expenditures rather than the jail absorbing the cost. If an inmate is not insured, medical treatment will not be denied. However, if an inmate does not have medical insurance, he will only be permitted to see a specialist if the County's doctor gives him a referral. If the inmate's personal insurance covers treatment by specialists, a referral from the County's doctor is not necessary. In this case, Mr. Hensley did not have insurance.

In response to his request for medical treatment, Plaintiff was taken to Dr. Shoup, the County's doctor, on July 14, 2004. During the appointment, Plaintiff was able to flex and extend his ankle joint and foot. Dr. Shoup diagnosed Plaintiff with a partially torn Achilles tendon.[2] He prescribed Ibuprofen, not knowing that Plaintiff had a liver disorder.[3] Dr. Shoup further indicated that no special treatment or accommodations were required, and he did not expect the jail officials to provide additional follow-up care or treatment. Furthermore, Dr. Shoup knew the jail officials routinely used leg restraints while transporting inmates and did not direct the officials to stop using them on Plaintiff.

---

[2] Dr. Shoup concluded that Plaintiff's Achilles tendon was not completely torn, or he would not have been able to maneuver his foot to the extent he did during the examination.

[3] Plaintiff refused to take the Ibuprofen, claiming that he was instructed by his family physician not to use Ibuprofen or Tylenol because he had a liver disorder. Even after later learning of Plaintiff's alleged disorder, Dr. Shoup said that he would have initially prescribed Ibuprofen even if he knew about Plaintiff's condition because Ibuprofen likely would not have affected the liver any differently than other pain medication he could have prescribed.

There is evidence that during Plaintiff's incarceration, Plaintiff was required to sleep on the top bunk and climb stairs to the second floor in order to shower. Plaintiff argues that the physical exertion caused him additional pain. He claims that he repeatedly asked the staff at the jail to permit him to sleep on a bottom bunk; however, he has not provided the Court with any grievances documenting his alleged request. Furthermore, Defendants provide evidence that these accommodations, including a lower bunk and shower facilities on the first floor, were not necessary. Dr. Shoup's assessment was that Plaintiff only had a partial tear of his Achilles tendon, and that he was able to walk, maneuver stairs, and climb to a top bunk without any accommodations by jail officials.

On July 25, 2004, Plaintiff filed another medical grievance. He made accusations that Dr. Shoup was not qualified to treat or diagnose a torn Achilles tendon. Plaintiff alleged that Dr. Shoup's diagnosis differed from the Truman Medical Center's Orthopedic Clinic's diagnosis and recommended treatment. Nurse Stevenson responded to Plaintiff's grievance stating that Dr. Shoup was qualified and treatment (the Ibuprofen prescription) was based on his assessment of Plaintiff's foot. However, Nurse Stevenson provided Plaintiff with the opportunity to provide documentation from the other hospitals that previously treated Plaintiff. Plaintiff never provided any documentation from either Cox Health or Truman Medical Center indicating he was given contradictory recommendations by Dr. Shoup. Dr. Shoup re-examined Plaintiff's foot on November 4, 2004 while treating Plaintiff for an ear infection. He prescribed Darvocet for Plaintiff's pain instead of Ibuprofen, but indicated that Plaintiff needed no special accommodations.

On February 18, 2004, Dr. Shoup received a letter from Plaintiff asking for a referral to a specialist. Dr. Shoup indicated that no referral was needed. Dr. Shoup re-examined Plaintiff's

4

foot for the final time on February 23, 2005, during an appointment where Plaintiff complained of flu-like symptoms. During the examination of Plaintiff's foot, Plaintiff against requested a referral to a specialist. Dr. Shoup refused, indicating that he believed no additional treatment was necessary. Plaintiff was released from Montgomery County Jail on April 3, 2005.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Crumley v. City of St. Paul, 324 F.3d 1003, 1006 (8th Cir. 2003). The United States Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 1).

"'By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Hufsmith v. Weaver, 817 F.2d 455, 460 n.7 (8th Cir. 1987) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis added by Supreme Court)). Material facts are "those 'that might affect the outcome of the suit under governing law.'" Id. (quoting Anderson, 477 U.S. at 247-48). Summary judgment will be denied due to a material issue of genuine fact if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Crumley, 324 F.3d at 1006. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine

issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, quoted in St. Jude Med., Inc. v. Lifecare Intern., Inc., 250 F.3d 587, 595 (8th Cir. 2001).

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. Crumley, 324 F.3d at 1006 (citing Lynn v. Deaconess Med. Ctr.-W. Campus, 160 F.3d 484, 487 (8th Cir. 1998)). The burden then shifts to the non-moving party who must set forth specific evidence showing that there is a genuine dispute as to material issues. Anderson, 477 U.S. at 249. To meet its burden, the non-moving party may not rest on the pleadings alone and must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

In analyzing summary judgment motions, the court must view the evidence in the light most favorable to the non-moving party. Crumley, 324 F.3d at 1008. The non-moving party is given the benefit of any inferences that can logically be drawn from those facts. Matsushita, 475 U.S. at 586. The court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." Kampouris v. St. Louis Symphony Soc., 210 F.3d 845, 847 (8th Cir. 2000). The court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." Id.

### III. ANALYSIS

Plaintiff brings his suit pursuant to 42 U.S.C. § 1983. This Section states that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State. . . subjects, or causes to be subjected, any citizen of the

> United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

Plaintiff claims that Defendants violated his Eighth Amendment constitutional right to be free from cruel and unusual punishment. In Estelle v. Gamble, the Supreme Court ruled that the Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency...against which we must evaluate penal measures...which involve the unnecessary and wanton infliction of pain." 429 U.S. 97, 102-03 (1976) (internal citations and quotations omitted). For this reason "[t]he government is obligated to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Robinson v. Hager, 292 F.3d 560, 563 (8th Cir. 2002) (quoting Estelle, 429 U.S. at 103). It is a violation of the Eighth Amendment to deny medical care for serious medical needs when the denial results in pain and suffering that serves no penological purpose. Estelle, 429 U.S. at 103. A serious medical need exists when a person "has been diagnosed by a physician as requiring treatment or [the need] is so obvious that even a lay person would easily recognize the need for a doctor's attention." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995).

Specifically, in order to find an Eighth Amendment violation, the inmate has the burden of proving both a subjective and objective component. Choate v. Lockhart, 7 F.3d 1370, 1374 (8th Cir. 1993). First, the prison official must deprive the inmate of a right that is objectively "sufficiently serious" to rise to the level of a constitutional violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The "act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. (internal quotations omitted). Second, the "prison official must have a sufficiently culpable state of mind." Id. (internal quotations omitted). "[T]hat [subjective] state of mind is one of 'deliberate indifference' to inmate health or safety." Id. Deliberate indifference exists when the prison official "knew of, yet disregarded, an excessive risk to his

7

health." Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting Logan v. Clarke, 119 F.3d 647, 649 (8th Cir. 1997). Therefore, for Plaintiff to succeed in his claim that Defendants were deliberately indifferent, he "must evidence (1) he suffered from a serious medical condition, (2) defendants knew of the condition, and (3) defendants deliberately disregarded the condition." Kitchen v. Miller, 343 F.Supp.2d 820, 823 (E.D. Mo. 2004).

Deliberate "indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05. "Mere negligence is not sufficient to support a cause of action[.]" Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993). Indeed, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 97 U.S. at 106. Treatment will only be considered inadequate if it is "grossly inappropriate or evidenced intentional maltreatment." Dulany v. Carnahan, 132 F.3d 1234, 1241 (8th Cir. 1997). Furthermore, "[w]hen an inmate alleges that the delay in treatment is the constitutional deprivation, the objective seriousness of the deprivation should also be measured by reference to the *effect* of the delay in treatment." Keeper v. King, 130 F.3d 1309, 1314-15 (8th Cir. 1997).

Treatment decisions are made using independent medical judgment. See Estelle, 97 U.S. at 107. Federal courts are reluctant to second guess treatment decisions made by competent physicians. Bouchard v. Magnusson, 715 F.Supp. 1146, 1149 (D. Me. 1989). "Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs." Davis, 992 F.2d at 153. Similarly, even when a prison physician has failed to follow the recommendations of outside specialists, the prison doctor will not be displaying deliberate indifference if the doctor used her 'independent professional judgment' when choosing the particular course of treatment." Dulany, 132 F.3d at 1240.

In this case, the County and jail officials clearly did not display deliberate indifference to Plaintiff's medical needs. Two days after receiving Plaintiff's medical grievance, he was taken to see the County's doctor.[4] Noone at the jail limited Plaintiff's access to Dr. Shoup. Dr. Shoup diagnosed Plaintiff's injury as a partial tear of the Achilles tendon, and the only instruction to jail officials was to make Ibuprofen available to Plaintiff. The evidence presented to this Court clearly demonstrates that Defendants did make it available; however, Plaintiff refused to take the medication. When Dr. Shoup later prescribed Darvocet as a pain killer instead of Ibuprofen, Defendants again made the medicine available consistent with Dr. Shoup's orders.

Plaintiff complains that he was not given crutches, that he was forced to climb to the top bunk to sleep, that he had to go upstairs to shower, and that the leg restraints used during transportation irritated his injury. It does not appear from his medical records that Plaintiff made any requests for specific accommodations during his appointments with Dr. Shoup. However, when Defendants asked Dr. Shoup about different requests by Plaintiff, Dr. Shoup repeatedly indicated that Plaintiff needed no accommodations or additional treatment for his injury.

Plaintiff complains that he should have been referred to a specialist, specifically, an orthopedic surgeon. Plaintiff argues that Dr. Shoup's diagnosis and recommendations differed from what Plaintiff was told during his examinations at Cox Health and Truman Medical Center. First, Plaintiff provided no documentation to jail officials that Dr. Shoup's treatment was in any way contradictory to what Plaintiff's previous doctors recommended. Indeed, Plaintiff has not filed any documentation to that effect with this Court in support of his allegations in this case.

---

[4]Plaintiff claims there was a two week delay in medical treatment after his arrival at the Montgomery County Jail. Plaintiff has failed to present any written requests for medical attention made prior to his July 12, 2004 grievance. However, assuming arguendo that Plaintiff made verbal requests for medical care, Plaintiff has presented no evidence that a two-week delay affected his prognosis. See Keeper, 130 F.3d at 1314-15. On the other hand, Defendants have presented evidence demonstrating that Dr. Shoup's diagnosis and treatment would have been the same had he seen Plaintiff upon his arrival at the jail.

Second, Plaintiff has provided no evidence, other than his own opinion, that he needed to see a specialist. Disagreement with Dr. Shoup's recommendations is insufficient to show deliberate indifference. Davis, 992 F.2d at 153. Third, even if Plaintiff's previous doctors had made recommendations that varied from the treatment of Dr. Shoup, Dr. Shoup's assessment and treatment of Plaintiff will not be second-guessed by this Court, so long as Dr. Shoup used his own medical judgment in diagnosing Plaintiff. See Dulany, 132 F.3d at 1240. Here, Dr. Shoup found that Plaintiff, at most, had partially torn his Achilles tendon. Dr. Shoup's assessment was based on the range of movement that Plaintiff demonstrated during his three examinations. Based on his assessment, Dr. Shoup indicated that Plaintiff did not need to see a specialist. This Court holds that Defendants were not deliberately indifferent to Plaintiff's medical needs by refusing to refer Plaintiff to a specialist.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [doc. # 64] is **GRANTED**.

**IT IS ORDERED** that Plaintiff's Complaint is **DISMISSED** with **PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Defendants' Motion for Summary Judgment [doc. # 68] is **DENIED**.

An appropriate order of dismissal will accompany this Order.

Dated this 20th day of January, 2006.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE